IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLIFTON P. BLANCHARD,<br><br>                              Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>                              Defendants. | **ORDER AND MEMORANDUM<br>DECISION TO CURE<br>DEFICIENT COMPLAINT**<br><br>Case No. 2:22-cv-40-TC<br><br>District Judge Tena Campbell |

In this pro se prisoner civil rights action, <u>see</u> 42 U.S.C. § 1983,[1] having screened

Plaintiff's Complaint (ECF No. 6) under its statutory review function,[2] the court orders Plaintiff

to file an amended complaint to cure deficiencies before further pursuing claims.

---

[1] The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any **State** or **Territory** … , subjects, or **causes** to be subjected, any citizen of the United States or other **person** within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[2] The screening statute, 28 U.S.C. § 1915A, reads:

> (a) Screening.—The court shall review … a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

## COMPLAINT'S DEFICIENCIES

The court notes the following deficiencies and provides guidance below concerning specific issues.  The complaint:

(a) lumps together Defendants' allegedly unconstitutional behaviors, instead of separately and affirmatively linking each individual defendant to each dated and specific individual allegation of a civil rights violation (see below);

(b) appears to inappropriately allege civil rights violations on a respondeat superior theory against the Utah Department of Corrections ("UDOC") and Warden Robert Powell (see below);

(c) improperly names UDOC as a § 1983 defendant, which is not an independent legal entity that can sue or be sued;

(d) raises issues of classification change/programming in a way that does not support a cause of action (see below);

(e) appears to inappropriately allege civil rights violations on the basis of denied grievances;

(f) appears to inappropriately allege a constitutional right to a grievance process.  See Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011) ("[T]here is no independent constitutional right to state administrative grievance procedures.  Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process." (citations omitted)); Dixon v. Bishop, No. TDC-19-0740, 2020 WL 1170235, at *7 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.");

(g) appears to inappropriately seek injunctive relief from defendants at a past facility where Plaintiff was held, even though such requests for injunctive relief from any defendants at a past facility may be moot.  See Jordan v. Sosa, 654 F.3d 1012, 1027-28 (10th Cir. 2011) (explaining inmate's official-capacity claim for injunctive relief against prison official mooted when inmate moved from facility);

(h) needs clarification on the standing doctrine (see below);

(i) needs clarification regarding First Amendment cause of action (see below);

(j) needs clarification regarding cause of action under Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc–2000cc-5 (see below);

(k) does not identify a specific claim under the Utah Constitution and appears to inappropriately seek enforcement of United Nations rules;

(l) is perhaps supplemented with claims from documents filed after the Complaint, even though such claims should be included in an amended complaint, if filed, and will not be treated further by the court unless properly included.

## GUIDANCE FOR PLAINTIFF

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction …; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought …."  Rule 8's requirements mean to guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest."  TV Commc'ns Network, Inc. v. ESPN, Inc., 767 F. Supp. 1062, 1069 (D. Colo. 1991).

Pro se litigants are not excused from meeting these minimal pleading demands.  "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Moreover, it is improper for the court "to assume the role of advocate for [a] pro se litigant."  Id.  Thus, the court cannot "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded."  Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989).

## A.  General Considerations

Plaintiff should consider these general points before filing an amended complaint:

(i) The amended complaint must stand entirely on its own and shall not refer to, or incorporate by reference, any portion of the original complaint.  See Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) (stating amended complaint supersedes original).  The amended complaint may not be added to after it is filed without moving for amendment.[3]

(ii) The complaint must clearly state what each defendant—typically, a named government employee—did to violate Plaintiff's civil rights.  See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is an essential allegation in a civil rights action).  "To state a claim, a complaint must 'make clear exactly who is alleged to have done what to whom.'"  Stone v. Albert, 338 F. App'x 757, 759 (10th Cir. 2009) (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008)).

(iii) Each cause of action, together with the facts and citations that directly support it, should be stated separately.  Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim.  Robbins, 519 F.3d at 1248 ("The [Bell Atlantic Corp. v.] Twombly Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].'

---

[3] The rule on amending a pleading reads:

    (a) Amendments Before Trial.
        (1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
            (A) 21 days after serving it, or
            (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
        (2) Other Amendments.  In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15.

[550 U.S. 544, 565] n.10 (2007).  Given such a complaint, 'a defendant seeking to respond to plaintiffs' conclusory allegations … would have little idea where to begin.'  Id.").

(iv) Plaintiff may not name an individual as a defendant based solely on that individual's supervisory position.  See Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating that supervisory status alone does not support § 1983 liability).

(v) The bare denial of a grievance, "by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).

(vi) "No action shall be brought with respect to prison conditions under [Federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  But Plaintiff need not include grievance details in his complaint.  Failure to exhaust administrative remedies is an affirmative defense that must be raised by Defendants.  Jones v. Bock, 549 U.S. 199, 216 (2007).

**B.  Affirmative Link**

A plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal participation requirement:

> That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue.  [Vasquez v. Davis, 882 F.3d 1270, 1275 (10th Cir. 2018).]  Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013); see also Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants "it is particularly important … that the complaint make clear exactly who is alleged to have done what to whom"); Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against

multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

Estate of Roemer v. Johnson, 764 F. App'x 784, 790-91 (10th Cir. 2019) (footnote omitted).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." Id. at 790 n.5.  Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous."  Id.

**C.  Respondeat Superior**

In asserting a § 1983 claim against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983.  See id.; Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities may not be held liable on the sole ground of an employer-employee relationship with a claimed tortfeasor.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978).  Supervisors are considered liable for their own unconstitutional or illegal policies only, and not for employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

**D.  Classification or Lack of Programming**

An inmate's transfer to different housing does not necessarily mean that prison administrators were deliberately indifferent to conditions with substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Nor is it, per se, "'atypical [of] … the ordinary incidents of prison life ….'"  Adams v. Negron, 94 F. App'x 676, 678 (10th Cir. 2004)

(quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)) (holding placement in highly structured, restrictive prison housing does not constitute deliberate indifference).  Rather, for instance, "[a]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983).

## E.  Standing

Any allegations involving violative behavior against inmates or people, other than Plaintiff, are disregarded.  Plaintiff lacks standing to bring claims on anyone else's behalf. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 498-99 (1975) ("As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." (citation omitted)).

## F.  First Amendment Cause of Action

The Tenth Circuit has outlined the framework a court should apply when considering a prisoner's First Amendment free exercise claim:

> It is well-settled that "[i]nmates … retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987).  Yet such protections are not without reasonable limitations.  The Supreme Court has cautioned that prison inmates are also subject to the "necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  <u>Id.</u>  Accordingly, the Court has held that "a prison regulation imping[ing] on inmates' constitutional rights … is valid if it is reasonably related to legitimate penological interests."  <u>Id.</u> at 349.

> Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  First, the prisoner-plaintiff must … show that a prison regulation "substantially burdened … sincerely-held religious beliefs."  <u>Boles v. Neet</u>, 486 F.3d 1177, 1182 (10th Cir. 2007).  Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs

are sincerely held." Snyder v. Murray City Corp., 124 F.3d 1349, 1352 (10th Cir.
1997). Second, prison officials-defendants may "identif[y] the legitimate
penological interests that justif[ied] the impinging conduct." Boles, 486 F.3d at
1182. At that point, courts balance the factors set forth in Turner v. Safley, 482
U.S. 78, 89-91 (1987), to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy
> regulation and a legitimate governmental interest advanced as its
> justification; (2) whether alternative means of exercising the right
> are available notwithstanding the policy or regulation; (3) what
> effect accommodating the exercise of the right would have on
> guards, other prisoners, and prison resources generally; and
> (4) whether ready, easy-to-implement alternatives exist that would
> accommodate the prisoner's rights.

> Boles, 486 F.3d at 1181.

Kay v. Bemis, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (footnotes omitted).

## G. RLUIPA

The Tenth Circuit has also described what a plaintiff must establish to pursue a claim

under RLUIPA:

> To proceed with a RLUIPA claim, a plaintiff must demonstrate that "he
> wishes to engage in (1) a religious exercise (2) motivated by a sincerely held
> belief, which exercise (3) is subject to a substantial burden imposed by the
> government." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1312 (10th Cir. 2010).
> Once the plaintiff shows a substantial burden, the government must demonstrate
> that the burden "results from a compelling governmental interest and that the
> government has employed the least restrictive means of accomplishing its
> interest." Id. at 1318 (internal quotation marks omitted); see also 42 U.S.C. §
> 2000cc-1(a).

> …

> At a minimum, a government substantially burdens a religious exercise
> when it (1) "requires participation in an activity prohibited by a sincerely held
> religious belief," (2) "prevents participation in conduct motivated by a sincerely
> held religious belief," or (3) "places substantial pressure on an adherent either not
> to engage in conduct motivated by a sincerely held religious belief or to engage in
> conduct contrary to a sincerely held religious belief." Abdulhaseeb, 600 F.3d
> at 1315.

<u>Tenison v. Byrd</u>, 826 F. App'x 682, 689-90 (10th Cir. 2020).

## ORDER

It is HEREBY ORDERED that:

(1) within **thirty days**, Plaintiff must within cure the complaint's deficiencies noted above by filing a document titled "Amended Complaint" that does not refer to or include any other document;

(2) the Clerk's Office shall mail Plaintiff the Pro Se Litigant Guide with a blank-form civil rights complaint, which Plaintiff must use if he wishes to pursue his potential claims further;

(3) if Plaintiff fails to timely cure the above deficiencies according to this Order's instructions, this action will be dismissed without further notice;

(4) the amended complaint shall not include any claims (a) occurring past the date of the Complaint, filed January 24, 2022; and (b) outside the allegations of transactions and events contained in the Complaint (ECF No. 6).  The Court will not address any such new claims or outside allegations, which will be dismissed.  If Plaintiff wishes to raise other claims and allegations, Plaintiff may do so only in a new complaint in a new case;

(5) Plaintiff shall not try to serve the amended complaint on Defendants; instead, the Court will perform its screening function and determine itself whether the amended complaint warrants service or dismissal.  No motion for service of process is needed.  <u>See</u> 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [<u>in forma pauperis</u>] cases.").  All defendants and claims should be included in an amended complaint, if filed, and will not be treated further by the court unless properly included.

(6) Plaintiff must tell the court of any address change and comply in a timely manner with court orders.  See D. Utah Civ. R. 83-1.3(e) ("In all cases, counsel and parties appearing pro se must notify the clerk's office immediately of any change in address, email address, or telephone number.").  Failure to do so may result in this action's dismissal for failure to prosecute.  See Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.");

(7) time extensions are disfavored, though reasonable extensions may be granted.  Any motion for time extension must be filed no later than **fourteen days** before the deadline to be extended.

 (8) no direct communication is to take place with any judge.  All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the Clerk of Court.

DATED this 7th day of August, 2023.

BY THE COURT:

TENA CAMPBELL
United States District Judge

10